**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MICHELLE B. o/b/o
DUANE B.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.

Case No. 3:23-cv-361

Rice, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Duane B filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On March 23, 2021, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging he became disabled on January 16, 2021. After his claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). Thereafter, a video hearing was held on June 27, 2022, before ALJ Stuart Adkins; wherein Plaintiff, represented by counsel, and a vocational expert (VE) testified. (Tr. 36-60). On November 9, 2022, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled prior to July 11, 2022, but disabled as of that date through the date of his death on August 19, 2022. (Tr. 17-29).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

Plaintiff was born in 1967 and was 54 years old on the date of his application. (Tr.191). He graduated high school and attended trade school. (Tr. 46). He has past relevant work as a carpenter. (Tr. 25).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease, degenerative joint disease of the hips with status/post bilateral arthroplasties, emphysema, hypertension." (Tr. 20). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> Standing and/or walking for about 4 hours in an 8-hour workday. No more than frequent balancing. No more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. The claimant could have had occasional concentrated exposure to extreme cold, extreme heat, humidity, dusts, odors, fumes, and pulmonary irritants. The claimant should have avoided unprotected heights, dangerous machinery, and commercial driving.

(Tr. 22). Based upon his RFC and testimony from the vocational expert, the ALJ concluded that prior to July 11, 2022, Plaintiff could not perform his prior work but could perform other jobs that exist in significant numbers in the national economy. (Tr. 25-26). Accordingly, the ALJ determined that prior to July 11, 2022, Plaintiff was not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by impermissibly interpreting a substantial critical body of objective medical evidence that was not reviewed by any medical source. Upon close

analysis, I find Plaintiff's argument is not well-taken.

I. Analysis

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

3

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

As noted above, Plaintiff argues that the ALJ should have further developed the record by soliciting the opinion of a medical expert, ordering an additional consultative examination, or sending the imaging and other records back to the state agency reviewing

4

physicians for an updated assessment. In this regard, Plaintiff contends that the record contained no medical source opinion interpreting a critical body of objective evidence and the ALJ based his RFC determination on his own interpretation of raw medical data.

A claimant's RFC is an assessment of "the most a [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). An RFC assessment must be based on all the relevant evidence in the case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)– (5).

In rendering the RFC determination, the ALJ need not discuss every piece of evidence considered. *See Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004)). However, the ALJ still has an obligation to consider all of the evidence before him and to meaningfully explain how the evidence supports each conclusion and limitation included in the RFC. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017) (Newman, M.J.), *report and recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017) (Rice, D.J.); Soc. Sec. R. 96-8p, 1996 WL 374184, *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence ...").

The Sixth Circuit has found that the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge is required to base her determination on a physician's

opinion). As such, no bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

An ALJ determines the claimant's RFC using "all the relevant evidence in [the] case record." Id. Yet it is the claimant's burden to establish his RFC. See id. § 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); see also *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating a more restrictive RFC); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability."). *Stephen W. v. Comm'r of Soc. Sec.*, No. 2:23-CV-1473, 2024 WL 4348850, at *3 (S.D. Ohio Sept. 30, 2024)

Thus, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Notably, the role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

Here, in formulating the Plaintiff's RFC, the ALJ properly considered objective medical evidence including imaging results and clinical exams findings. He also considered the record evidence showing improvement of his condition after right hip

6

surgery as well as Plaintiff's testimony regarding his activities of daily living, including his part-time work activity for his son.

In this regard, the ALJ noted that the exertional, postural, climbing, and hazard exposure limitations were based on Plaintiff's history of degenerative disc and joint disease. In support of this finding, the ALJ noted that in January 2018, Matthew R. Kinzie, M.D., reviewed x-ray imaging and noted findings of degenerative lumbar changes. (Tr. 23, 607). In June 2022, John Robert Corker, M.D., examined the claimant in the emergency department and noted a final impression on an acute exacerbation of chronic lower back pain and a paraspinal muscle spasm. (Tr. 23, 771-72). Three days later, Mary Katelin Kanoza, M.D., assessed the claimant with chronic bilateral lower back pain. (Tr. 23, 802). At the end of the month, Aakash Singh, M.D., reviewed new x-ray imaging and noted an impression of moderate degenerative multilevel lumbar changes. (Tr. 23, 817).

With respect to degenerative joint disease, the ALJ noted that in January 2018, Dr. Kinzie reviewed x-ray imaging and noted findings of severe right hip osteoarthritis and a previous left hip arthroplasty. (Tr. 23, 607). In February 2021, Dr. Kanoza assessed the Plaintiff with right hip pain. (Tr. 23, 436). In March 2021, Joseph DiCicco, D.O., assessed the claimant with right hip osteoarthritis and pain. In April 2021, Devon Begley, M.D., reviewed x-ray imaging and noted an impression of severe right hip osteoarthritis and status/post left hip arthroplasty. (Tr. 23, 488). In May 2021, Dr. DiCicco performed a total right hip arthroplasty, noting pre- and post-operative diagnoses of severe right hip osteoarthritis. (Tr. 23).

Notably, post-surgical notes showed that he was doing well without complication and had a normal pulmonary exam. (Tr. 385, 394, 402.) His discharge notes showed that

7

on musculoskeletal exam, he had no joint tenderness, deformity, or swelling. (Tr. 413.) He was advised to resume activity as tolerated. (Tr. 414-415.) The record indicated that he was using a cane post-op. (Tr. 744.)

On June 24, 2021, his physical exam revealed no swelling of the right hip, well-healed wounds, and normal range of motion for post-op status. (Tr. 741.) He was walking with a cane and the medical provider noted that if there was any residual weakness and he was able to transition off the cane, she recommended physical therapy. (Tr. 741.)

The undersigned recognizes that the ALJ mistakenly stated that Plaintiff had been able to transition off the cane less than two months after his hip replacement. (Tr. 24). This appears to by a typographical error. However, as noted by the Commissioner, there are no additional reports of Plaintiff using a cane in the record. Additionally, Plaintiff had mostly normal physical examination findings after this visit, and at least one exam revealed that he walked with an even and steady gait.

On August 5, 2021, an exam of the right hip showed no swelling, well-healed wounds, and full range of motion. (Tr. 736.) He also had normal musculoskeletal range of motion otherwise and normal neurological findings including normal coordination. (Tr. 735.) In October 2021, state agency medical consultant, Yacob Gawo, M.D., reviewed the evidence of record and noted that the current medical evidence was insufficient to assess Plaintiff's statements regarding the severity of his musculoskeletal symptoms /impairments and their functionally limiting effects. (Tr. 64.) Dr. Gawo noted that there was a need for a current comprehensive orthopedic exam, x-rays of the lumbar spine, a statement regarding the need for assistive devices, and evidence regarding his activities

8

of daily living. (Tr. 64).  Ultimately, Dr. Gawo determined that Plaintiff was not disabled. (Tr. 66).

In February 2022, state agency medical consultant, W. Scott Boltz, M.D., reviewed the evidence of record and came to the same conclusions as Dr. Gawo. (Tr. 70). However, Dr. Boltz also noted that Plaintiff did not attend a consultative exam and did not respond to call attempts or letters. (Id.).  Dr. Boltz also determined that Plaintiff was not disabled. (Tr. 71).

The ALJ noted the analysis of Dr. Gawo and Dr. Bolz but noted that a significant number of admitted and considered records were submitted after they each completed their review.  Regardless, given the additional evidence available, the ALJ found that significant evidence was available to fully consider Plaintiff's work-related functional abilities.  (Tr. 25).

The ALJ also considered Plaintiff's testimony at the hearing. (Tr. 23-24).  In this regard, the ALJ noted that Plaintiff testified that his back pain is so severe he cannot get off the couch. He further testified that he anticipates have back surgery in the future once diagnostic imaging reports are completed.  Plaintiff also testified that he drives, does laundry and can climb stairs most days.  (Tr. 52-54 ). He also testified that he was working part-time for his son operating a forklift.  He testified that he is on the forklift up to six hours a night and can comfortably lift up to 20 pounds.  (Tr. 54).

In light of the foregoing, the ALJ determined that Plaintiff could perform light work as determined above which is supported by records of the Plaintiff's medically determinable severe impairments and the ALJ's review of the Plaintiff's subjective complaints of pain and limitation, as given in hearing testimony.

9

As noted above, Plaintiff contends that ALJ's RFC determination is not substantially supported because a critical body of objective medical evidence that was not reviewed by any medical source credited by the ALJ. Notably, Plaintiff argues "where a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions, the ALJ should develop the record by obtaining opinion evidence that accounts for the entire relevant period." *McCauley v. Comm'r of Soc. Sec.*, No. 3:20- CV-13069, 2021 WL 5871527, at *14-15 (E.D. Mich. Nov. 17, 2021), report and recommendation adopted, No. 20-CV-13069, 2021 WL 5867347 (E.D. Mich. Dec. 10, 2021) (*citing Branscum v. Berryhill*, No. 6:17-CV-345, 2019 WL 475013, at *11 (E.D. Ky. Feb. 6, 2019)). While the ALJ is, of course, not required to adopt any specific medical source opinion, it is also well-established that the ALJ is not qualified to interpret raw medical data in functional terms. *See Mitsoff v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 693, 702 (S.D. Ohio 2013).

Here, Plaintiff's points to certain evidence he contends the state agency medical consultants did not consider and argues that the ALJ relied on his own lay interpretation of the raw medical data in assessing his mental RFC. (Doc. 8 at 5-10).[2] Namely, Plaintiff

---

[2] In support of this argument, Plaintiff cites *Deskin v. Comm'r of Soc. Sec.*, 60 F. Supp.2d 908, 912 (N.D. Ohio 2008), wherein the Court found that without the benefit of any medical opinion, the ALJ is impermissibly relied upon her own lay opinion to construct Plaintiff's RFC. However, *Deskin* is not binding authority and several courts in this District have criticized or declined to follow the *Deskin* standard. *See, Carr v. Comm'r of Soc. Sec.,* No. 5:23-CV-00187, 2024 WL 1343473, at *5 (N.D. Ohio Mar. 30, 2024); See also *Winans v. Comm'r of Soc. Sec.*, No. 5:22-CV-01793, 2023 WL 7622634, *4 (N.D. Ohio November 15, 2023) (*Deskin* is a non-binding district court decision that conflicts with the regulations and Sixth Circuit case law.... By requiring an ALJ to secure a medical opinion whenever the record does not contain such an opinion, subject to only limited exceptions, *Deskin* places a higher burden on the ALJ than the Sixth Circuit does). Here, because this newer medical evidence was not raw medical data, the ALJ did not need another medical professional to opine as to the new records indications of Plaintiff's functional capacity. *Montgomery v. Comm'r of Soc. Sec.*, No. 2:20-CV-4489, 2021 WL 5413962, at *8 (S.D. Ohio Nov. 19, 2021), *report and recommendation adopted*, No. 2:20-CV-4489, 2021 WL 5919128 (S.D. Ohio Dec. 14, 2021) ("ALJs are not required to order a consultative examination if there is a considerable amount of medical evidence in the record concerning plaintiff's alleged ailments and his resulting functional capability.").

cites, *inter alia*, to scans and x-rays from 2018 of the left and right hip, 2019 x-ray of the left ankle showing post-traumatic deformity and degenerative changes, 2019 bilateral x-ray of his knees showing small joint effusion, and a 2020 treatment which indicated use of a front wheeled walker.[3] (Tr. 325, 607, 635, 662, 663). Plaintiff also cites to a number of records from 2021 showing hip pain and swelling, subsequent hip surgery, elevated blood pressure, and degenerative changes and disc narrowing of the thoracic spine. (Tr. 436, 516, 516, 748). Plaintiff also notes that a chest CT scan in July 2022 showed emphysema, bilateral indeterminate pulmonary nodules, bilateral rib fractures (some chronic), severe T4 compression fracture, and T12 superior endplate/compression fracture. (Tr. 812-813.). Thereafter, on August 12, 2022, Beeman was admitted to the hospital due to cardiac arrest and he passed away on August 19, 2022. (Tr. 821, 825-1183).

However, upon careful review, the undersigned finds that the ALJ did not interpret raw medical data because he considered the examination and imaging reports from various medical professionals rather than base is findings on raw numbers and images. Notably, courts have found that an ALJ's review of a medical provider's summation of medical results does not constitute an ALJ interpreting raw data. See *Michael G. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5467, 2022 WL 11615881, at *8 (S.D. Ohio Oct. 20, 2022) (Jolson, M.J.) (*citing Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726–27 (6th Cir. 2013)).

---

[3] The notes indicate front wheeled walker as a current DME but then also goes on to state "Pt not using any DME." See Tr. 325.

Furthermore, the undersigned agrees that the ALJ was not required to further develop the record because the record contained sufficient evidence for the ALJ to evaluate Plaintiff's claim of disability and make an informed decision regarding his RFC. As detailed above, in making his RFC determination, the ALJ cited objective medical evidence in the treatment record including imaging results and clinical exams findings, evidence showing improvement of his condition after right hip surgery, and testimony regarding his activities of daily living, including his part-time work activity for his son. Thus, the ALJ made the necessary connection between the objective medical evidence he relied upon and his conclusion that Plaintiff could perform a range of light work.

If the ALJ supports his RFC with a "combination of objective medical evidence and non-medical evidence," decisions "even where there is no medical opinion that corresponds precisely to the RFC found by the ALJ" are upheld. See *Naddra v. Comm'r of Soc. Sec.,* No. 1:16-CV-340, 2016 WL 11268204, at *8 (S.D. Ohio Dec. 22, 2016) (Bowman, M.J.) (collecting cases), report and recommendation adopted, No. 1:16-CV-340, 2017 WL 1194708 (S.D. Ohio Mar. 31, 2017) (Barrett, D.J.). Here, the ALJ supported his RFC determination with an analysis of Plaintiff's daily activities and the objective medical evidence. (Tr. 23-25).

Sixth Circuit caselaw states that the final responsibility for deciding the RFC is reserved to the Commissioner, not a physician. See 20 C.F.R. § 416.927(d); *Coldiron*, 391 F. App'x at 439. Furthermore, the foundation of the ALJ's RFC does not have to be a physician's medical opinion, so long as the ALJ sufficiently "make[s] a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc.*

12

Sec., 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)). The ALJ did so here.

It is well-established that a claimant bears the burden of producing evidence that demonstrates his entitlement to disability benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir. 1971)). As such, the "burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (internal citation omitted).

As noted by the Commissioner, the ALJ "is a neutral factfinder, not an advocate" and "promoting the claimant's case . . . is not the ALJ's obligation." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (citations omitted). "Although the ALJ is responsible for ensuring the claimant a full and fair hearing, the claimant has the ultimate burden of producing sufficient evidence to show the existence of a disability." *See Allison v. Apfel*, 229 F.3d 1150 (6th Cir. 2000) (citations omitted); see also 20 C.F.R. § 404.1512(a). The ALJ is not required to further develop the record if there is sufficient evidence in the record to evaluate the disability claim. *See Hizer v. Comm'r of Soc. Sec.*, 852 F. App'x 999, 1003 (6th Cir. 2021) (no duty to develop the record where the claimant was represented by counsel and the record was not deficient).

Here, Plaintiff has produced no opinions from any medical provider suggesting the existence of any functional limitations greater than those found by the ALJ which undermines his arguments regarding the completeness of the administrative record and the ALJ's RFC formulation. Nor does Plaintiff explain how this evidence establishes

13

greater functional limitations than those found by the ALJ. Additionally, Plaintiff's argument that the ALJ violated his duty to develop the record by failing to obtain a medical expert rings hollow given Plaintiff's failure to schedule and attend a consultative examination. (See Tr. 70).

Ultimately, it is the sole responsibility of the ALJ—not a physician or a particular medical opinion—to evaluate the evidence in the record and determine the RFC. *See* 20 C.F.R. § 416.946; *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Based on the foregoing, the undersigned finds that ALJ's RFC determination is supported by appropriate and substantial evidence.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED**, and that this case is **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MICHELLE B. o/b/o<br>DUANE B. | Case No. 3:23-cv-361 |
| Plaintiff, | Rice, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).